# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

ERA Venture Capital, Inc.,

 Plaintiff,

v.

Christopher Lokke; John Does 1–6;
the City of Minneapolis, a municipal
corporation; and Avis Budget Car
Rental, LLC, a New Jersey limited
liability company,

 Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 18-1969 ADM/BRT

_____

Ryan L. Kaess, Esq., Kaess Law LLC, St. Paul, MN, on behalf of Plaintiff.

Brian S. Carter, Assistant City Attorney, Minneapolis City Attorney's Office, Minneapolis, MN, on behalf of Defendants City of Minneapolis and Christopher Lokke.

Richard C. Landon, Esq., Gray Plant Mooty, Minneapolis, MN, on behalf of Defendant Avis Budget Car Rental, LLC.

_____

## I. INTRODUCTION

On January 17, 2019, the undersigned United States District Judge heard oral argument on Defendants Christopher Lokke ("Officer Lokke") and the City of Minneapolis' (collectively, the "City Defendants") Motion to Dismiss [Docket No. 14]. Plaintiff ERA Venture Capital, Inc. ("Plaintiff") has filed a Response [Docket No. 29] opposing the Motion. For the reasons set forth below, the City Defendants' Motion is granted.

## II. BACKGROUND

### A. Agreement

On February 1, 2017, Plaintiff's predecessor in interest, ERA Venture Capital, LLC ("ERA"), entered into an Independent Operator Agreement ("Agreement") with Defendant Avis

Budget Car Rental, LLC ("Avis"). Compl. [Docket No. 1, Attach. 1] ¶ 8. The Agreement named an Avis affiliate as the "Licensor," and ERA as the "Independent Agency Operator." Compl. Ex. A ("Agreement") at 1.[1]

The Agreement provided that ERA operate a car rental business at South 10th Street in Minneapolis, Minnesota (the "Location") subject to terms and conditions stated in the Agreement. Compl. ¶ 9; Agreement at 2. With respect to the Location, the Agreement provided:

> Both parties agree that [ERA] will operate the [L]ocation . . . on the terms and conditions stated herein. [Avis] will obtain the right to occupy the Location for the initial term of this Agreement and a business license, and will furnish the location with a Wizard Terminal and furniture. [Avis] shall be under no obligation to maintain the right to occupy the Location for any term beyond the initial term of the Agreement.

Agreement at 2.

As compensation for renting Avis' vehicles to customers, ERA was to receive a 12% commission of all rental revenues. Compl. ¶ 10. The Agreement specified that "[b]oth parties wish to establish an independent contractor relationship," and that ERA was to notify its employees that they were employed by ERA and were not employees of Avis. Compl. ¶ 11; Agreement at 5.

The Agreement was for a one-year term ending January 31, 2018 "unless terminated before then by either party for good cause." Compl. ¶ 12; Agreement at 6. Either party to the Agreement could give notice of its intention not to renew at least 90 days before the end of the term. Compl. ¶ 13; Agreement at 6. Notice was to be provided by certified or registered mail or by facsimile. Compl. ¶ 14; Agreement at 7. If no notice was given, the Agreement would

---

[1] Exhibits A through C of the Complaint are filed as Docket No. 4.

automatically renew on its anniversary. Compl. ¶ 13; Agreement at 6. Paragraph 17 of the Agreement also gave Avis the right to terminate the Agreement immediately under the following circumstances:

1. The Location is abandoned or a threat to abandon the location has been made.

2. Vehicles have been dealt with by your employee, Principal or agent in a grossly negligent or reckless manner.

3. Your employee, Principal or agent engages in the unauthorized sale, rental, or use of [Avis] vehicles.

4. Your employee, Principal or agent engages in any act of dishonesty, violence, abusive or threatening behavior, misappropriation of funds, or any unlawful act of discrimination or demonstrates any racial, gender, religious or age insensitivity against any person including [Avis] customers or [Avis] corporate employees or business partners or affiliates[.]

5. Your employee, Principal or agent demonstrates poor customer service to a level likely to substantially impair [Avis]'s reputation.

Agreement at 6–7.

**B. Avis' Letters to Plaintiff**

On October 31, 2017, Avis provided Plaintiff with a letter stating that Avis would not renew the Agreement and that the Agreement would be terminated on January 31, 2018. Compl. ¶ 15, Ex. B. Plaintiff alleges that this notice was inadequate because it was not served by certified mail, registered mail, or by facsimile, and that as a result the Agreement automatically renewed and remains effective today. Compl. ¶¶ 16–17.

On December 12, 2017, Avis again wrote a letter to Plaintiff, this time stating that Avis was terminating the Agreement immediately. Compl. ¶ 18; Ex. C. In the December letter, Avis stated that: Plaintiff's employee Faheem Khan ("Khan") failed to open the rental store on

December 4; Khan had been stopped by police on December 3 while driving an Avis rental vehicle without a rental agreement; Khan told police that the rental vehicle was his company car; Khan was arrested for multiple reasons, including assaulting a police officer; and Plaintiff allowed Khan to open a rental agreement on December 6 and backdate it to December 3. Ex. C. Plaintiff alleges that none of the facts listed in Avis' December 2017 letter fall within the circumstances listed in Paragraph 17 of the Agreement that entitle Avis to terminate the Agreement immediately. See Compl. ¶ 20.

**C. Officer Lokke's Actions**

The December 2017 letter was hand delivered to ERA by Avis employee Jennifer Dutton ("Dutton"), who was accompanied by two Minneapolis police officers. Compl. ¶ 23. Dutton advised the officers that an employment relationship existed between Avis and Plaintiff's employees, that Avis had fired the employees, and that she needed the officers' help to remove them from the rental store. Compl. ¶ 24. Plaintiff's employees insisted that they were not Avis employees and that Avis would need a court order to remove them. Compl. ¶ 25.

Plaintiff's employees requested that a police supervisor be contacted. Compl. ¶ 26. Based on this request, supervisor Officer Lokke responded to the scene. Id. After continued debate over whether a court order was required, the officers left to consult with the Hennepin County Sheriff. Compl. ¶ 27. Officer Lokke later returned to the rental store with other unnamed Minneapolis police officers (the "John Doe Defendants") and demanded that Plaintiff and its employees leave immediately or be arrested for trespassing. Compl. ¶ 29. Rather than be arrested, Plaintiff left the premises, "essentially terminating their business." Compl. ¶ 30.

4

**D. Present Action**

On July 13, 2018, Plaintiff filed this action under 42 U.S.C. § 1983. Count I alleges that Officer Lokke and the John Doe Defendants, acting under the color of state law, violated Plaintiff's right to due process under the Fourteenth Amendment to the U.S. Constitution by forcing them to leave the Location and abandon their business under threat of arrest without a hearing. Compl. ¶¶ 31–35. Count II alleges municipal liability against the City based on the alleged Due Process violation in Count I. Compl. ¶¶ 36–40. Count III alleges a breach of contract claim against Avis. Compl. ¶¶ 41–43.

The City Defendants move to dismiss Counts I and II of the Complaint under Federal Rule of Civil Procedure 12(b)(6).

### III. DISCUSSION

**A. Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. The Court may consider "the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011).

A pleading must relate sufficient "facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

**B. Procedural Due Process (Count I)**

    **1. Parratt-Hudson Doctrine**

The City Defendants argue that Plaintiff's claim in Count I—that Officer Lokke and the John Doe Defendants violated Plaintiff's procedural due process rights—is foreclosed by the doctrine established in the Supreme Court's decisions in Parratt v. Taylor, 451 U.S. 527 (1981) and Hudson v. Palmer, 468 U.S. 517 (1984).

The Parratt-Hudson doctrine holds that the "unauthorized . . . deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson, 468 U.S. at 533. The underlying rationale for the doctrine is that "when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply impracticable since the state cannot know when such deprivations will occur." Id. (internal quotation marks omitted). In those circumstances,

due process is not violated if the state makes a meaningful postdeprivation remedy available. Id. Thus, to prevail on a procedural Due Process claim arising from a random and unauthorized act by a state employee, a plaintiff must demonstrate that the available state law remedies are inadequate. Ali v. Ramsdell, 423 F.3d 810, 814 (8th Cir. 2005).

In Reese v. Kennedy, the Eighth Circuit applied the Parratt-Hudson doctrine in a case involving similar facts to those alleged here. 865 F.2d 186 (8th Cir. 1989). Reese argued that police had unlawfully evicted her from her residence without following eviction procedures. Id. at 187. The Eighth Circuit noted that "[t]o the extent that Reese argues that [the officers] did not follow existing eviction procedures, Parratt provides that a due process deprivation does not occur because of an unauthorized failure of state officials to follow established state procedures." Id. The Court affirmed the dismissal of the plaintiff's claim after concluding that "the availability of state tort remedies precludes Reese's section 1983 claim and satisfies the requirements of due process." Id.

Here, as in Reese, Plaintiff's § 1983 claim is based on the deprivation of property caused by police officers' alleged failure to follow existing eviction procedures. The state could not provide a meaningful predeprivation process because it could not have anticipated and controlled in advance the officers' random and unauthorized conduct. Additionally, like Reese, state law provides Plaintiff with an adequate postdeprivation remedy. For example, Minn. Stat. § 557.08 allows a person to recover treble damages if they are forced from real property without lawful authority. Minnesota tort law provides a cause of action for wrongful interference with a contractual relationship, should Plaintiff be able to prove that Officer Lokke and the John Doe Defendants aided the breach of the Agreement between Plaintiff and Avis without justification.

7

See Moore v. Hoff, 821 N.W.2d 591, 595–96 (Minn. Ct. App. 2012). State law further provides that "every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function." Minn. Stat. § 466.02.

Plaintiff argues that the state had the ability to provide a predeprivation hearing because Officer Lokke, upon reviewing the Agreement, was aware that a meaningful predeprivation proceeding was available in the form of an eviction proceeding. However, "[w]hether an individual employee himself is able to foresee a deprivation is simply of no consequence. The controlling inquiry is whether the state is in a position to provide for a predeprivation process." Hudson, 468 U.S. at 534.

Because the Complaint alleges a random and unauthorized act, and because Plaintiff does not allege or argue that postdeprivation state remedies are inadequate, Plaintiff's due process claim is barred by the Parratt–Hudson doctrine.

### 2. Qualified Immunity

The City Defendants argue that the due process claim in Count I additionally fails because Officer Lokke and the John Doe Defendants are entitled to qualified immunity.

"Qualified immunity shields government officials from liability and the burdens of litigation in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." LaCross v. City of Duluth, 713 F.3d 1155, 1157 (8th Cir. 2013). A police officer is entitled to qualified immunity unless the facts shown by the plaintiff establish "(1) that a plaintiff's constitutional rights have been violated, and (2) those rights were so clearly established at the time of the

8

violation that a reasonable officer would have known that his actions were unlawful." Ulrich v. Pope Cty., 715 F.3d 1054, 1058 (8th Cir. 2013).

"[F]or a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." White v. Pauly, 137 S. Ct. 548, 551 (2017) (quotation marks and citations omitted). Additionally, "the clearly established law must be particularized to the facts of the case. Otherwise, [p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability by simply alleging violation of extremely abstract rights." Id. at 552 (quotation marks and citations omitted, alteration in original).

Defendants argue that Plaintiff did not have a clearly established property interest protected by the Due Process clause because Plaintiff was a mere licensee under the Agreement, and Minnesota law provides that a licensee does not have a property interest in the continued possession of property.

As the Minnesota Supreme Court has explained, a licensee differs from a tenant in that the licensee merely has permission to use land, whereas a tenant has a possessory interest in the land:

> A tenant under a lease is one who has been given a possession of land which is exclusive even of the landlord except as the lease permits his entry, and saving always the landlord's right to enter to demand rent or to make repairs. A licensee is one who has a mere permission to use land, dominion over it remaining in the owner and no interest in or exclusive possession of it being given to the occupant.

Seabloom v. Krier, 18 N.W.2d 88, 91 (Minn. 1945). Thus, there is no clearly established law holding that a license to use real property constitutes a property interest protected by the Due

9

Process clause.

Plaintiff does not dispute that a licensee does not have a property interest in the continued possession of a property. However, Plaintiff disagrees that it was a mere licensee. Plaintiff argues that it should be treated as a tenant because the Complaint alleges that Plaintiff had the exclusive right to use the Location. See Compl. ¶ 9.

At the time of Officer Lokke's alleged misconduct, Plaintiff's property interest, if any, in the Location was not so clearly established that a reasonable officer would have known that his actions were unlawful. The Agreement that was shown to Officer Lokke during the dispute identifies Avis as the "Licensor," and does not include the words "tenant" or "lease." See Agreement at 1. The Agreement also states that "[Avis] will obtain the right to occupy the Location for the initial term of th[e] Agreement." Agreement at 2. Additionally, Avis employee Dutton told the officers that Plaintiff was employed by Avis and had been fired. Compl. ¶ 24. Thus, even Plaintiff's allegations do not support that only a plainly incompetent officer would have believed that Plaintiff lacked a protected property interest in the Location. Because it was not clearly established that Plaintiff had a property interest protected by the Due Process clause, Officer Lokke and the John Doe Defendants are entitled to qualified immunity.

Plaintiff nevertheless argues that qualified immunity does not apply because the Defendant officers are being defended and indemnified by the City pursuant to Minn. Stat. § 466.07, Subd. 1.[2] Plaintiff contends that the rationale supporting qualified immunity does not

---

[2] This statute states in relevant part:

Subject to the limitations in section 466.04, a municipality or an instrumentality of a municipality shall defend and indemnify any of its officers and employees, whether elective or appointive, for damages, including punitive damages, claimed or levied

10

apply when the assets of the municipality, rather than the personal assets of the officers, are at stake. This argument has been considered and rejected by the Eighth Circuit:

> Greer next argues that the defendants should not be entitled to qualified immunity because they would be indemnified, pursuant to Iowa state law, for any award of damages entered against them. See Iowa Code §§ 669.21–.23 (Supp.1997). According to Greer, because the defendants would be indemnified, there is no reason to provide them with qualified immunity. In our view, the policy reasons behind qualified immunity in § 1983 actions are much broader than simply protecting state employees from having to pay damages. Therefore, we are not convinced by Greer's argument and find no compelling reason to further comment on this issue.

Greer v. Shoop, 141 F.3d 824, 828 (8th Cir. 1998).

Thus, even if the due process claim in Count I were not barred by the Parratt-Hudson doctrine, the claim fails because Officer Lokke and the John Doe Defendants are entitled to qualified immunity regardless of their indemnification status.

## C. Monell Claim (Count II)

Plaintiff asserts a claim against the City for municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978). "A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a 'custom or usage' with the force of law.'" Ware v. Jackson Cty., Mo., 150 F.3d 873, 880 (8th Cir. 1998) (quoting Monell, 436 U.S. at 691).

---

against the officer or employee, provided that the officer or employee:

(1) was acting in the performance of the duties of the position; and

(2) was not guilty of malfeasance in office, willful neglect of duty, or bad faith.

Minn. Stat. § 466.07, Subd. 1.

11

Plaintiff alleges that its injuries were caused in part by the City's policy and custom of indemnifying its officers for § 1983 damages, which the City is legally obligated to do under Minn. Stat. § 466.07, Subd. 1. See Compl. ¶¶ 37–40. The City's adherence to state law does not amount to an unconstitutional policy. Thus, the Complaint fails to state a Monell claim. Count II is dismissed.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants Christopher Lokke and the City of Minneapolis' Motion to Dismiss [Docket No. 14] is **GRANTED**; and

2. Counts I and II of the Complaint are **DISMISSED**.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: March 8, 2019.